IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALMA McKIA-COY and MARIO COY,   )
                                 )
        Plaintiffs,              )
                                 )
    vs.                          )    No.  08 C1709
                                 )
HORSESHOE HAMMOND, LLC d/b/a     )
HORSESHOE HAMMOND, a foreign     )
corporation,                     )
                                 )
        Defendants.              )

## MEMORANDUM OPINION AND ORDER

This negligence claim arose when plaintiff Alma McKia-Coy, an Illinois resident, allegedly slipped and fell while on the premises of the defendant Horseshoe Hammond, LLC, d/b/a Horseshoe Casino Hammond ("Horseshoe"), an Indiana company. Count I of the complaint alleges that McKia-Coy sustained serious and permanent injury in the May 20, 2006, slip-and-fall incident. Count II is a claim by plaintiff Mario Coy, McKia-Coy's husband, for loss of consortium resulting from his wife's injury. The alleged damages total at least $100,000.

Plaintiffs initially filed suit in the Circuit Court of Cook County, Illinois, on February 13, 2008. Horseshoe filed a notice of removal on March 24, 2008, followed by a motion to dismiss for improper venue, pursuant to Fed.R.Civ.P. 12(b)(3). This court permitted McKia-Coy and Coy to engage in written discovery and to take depositions relative to the issue of venue, to determine whether Horseshoe was subject to personal jurisdiction in Illinois.

Following this limited discovery, the court finds that Horseshoe's contacts with the State of Illinois are so continuous and systematic that the casino is subject to general

jurisdiction. For the following reasons, Horseshoe's motion to dismiss is denied.

The parties have agreed to a protective order to shield from public disclosure information obtained during discovery. Therefore, some of the relevant facts about Horseshoe's contacts with the state will not be included in this order.

Horseshoe casino is located in Hammond, Indiana, about 20 miles from downtown Chicago. It is owned and operated by Horseshoe Hammond, LLC, an Indiana limited liability company. It neither owns nor operates any businesses in Illinois. Horseshoe Hammond, LLC is owned by Horseshoe Gaming Holding, LLC, which was formed under the laws of Delaware (Mazer aff. at 4).

According to Horseshoe's marketing director, Albert Liu, Illinois is one of the largest advertising markets for Horseshoe (Liu dep., June 12, 2008 at 14). At least half of the casino's substantial advertising and marketing budget for 2008 was for Illinois. *Id.* at 13-14. Horseshoe regularly advertises in Chicago newspapers and magazines, on the radio, and on television. The radio commercial ends with the phrase, "The closest casino to Chicago," and then provides driving directions from Chicago (plf. br. at 3). The television commercials end with the tag line, "Where Chicago gambles." *Id.* at 4. In February 2008, Horseshoe ran ads in Chicago newspapers and magazines and on Chicago radio.[1]

Other advertising efforts include listings for Horseshoe in a significant number of Illinois phone books, billboards along highways in Illinois, and wallscapes (advertisements placed on the sides of buildings). *Id.* at 3-4. The title of Horseshoe Hammond's website states, "Chicago's Best Gambling/Entertainment Destination," and the website provides driving

---

[1] Although no television advertising was done in February 2008, Horseshoe ran ads on Chicago TV stations for at least three months in 2007 -- as recently as November 2007.

directions from Illinois.[2]

The casino also sends out mass mailings each month. In February 2008, more than half of the mailings were sent to Illinois residents. *Id.* at 2. These mailings include food vouchers for use at the casino. They are typically sent to people who have previously visited the casino and are part of Horseshoe's "Loyalty Club," a program designed to induce customers to return to the casino. *Id.* at 2-3.

Horseshoe has also sent representatives to Illinois trade shows, advertised in brochures and programs for charitable events, and had a float in a parade. *Id.* at 4. It has also entered into contracts with bus companies to provide patrons free transportation to and from the casino. The purpose for these arrangements is to allow those who would not otherwise be able to get there, to access the casino (plf. br. 6). More than 50 percent of the bus dropoffs come from points in Illinois. *Id.* at 5. Horseshoe has at least one contract with an Illinois bus company, Chicago Entertainment Tours ("CET"), which has been in effect for several years, and remained in effect in February 2008. *Id.* CET's owner stated that the bus company drives a substantial number of people per day to the casino from six pick-up points in the Chicago area. *Id.* Horseshoe also advertises the casino on the sides of the buses. *Id.* at 6.

## Discussion

In a civil action before a federal district court on the basis of diversity, venue is proper in any judicial district in which (1) a defendant in the action resides, if all defendants reside in the same state, (2) a substantial part of the events or omissions giving rise to the claim occurred, (3) or in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28

---

[2] The URL for the website is: http://www.harrahs.com/casinos/horseshoe-hammond/hotel-casino/property-home.shtml.

U.S.C. § 1391(a).

Horseshoe is a citizen of Indiana – it was formed under the laws of Indiana and has its principal place of business there. The alleged injury to McKia-Coy took place in Indiana, not Illinois (plf. cplt. ¶ 6). Therefore, for venue to be proper in this court, Horseshoe must have been subject to personal jurisdiction at the time the action was commenced.

Once a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that personal jurisdiction exists. Jennings v. AC Hydraulic A/S, 383 F.3d 546, 548 (7th Cir. 2004). A federal district court sitting in a diversity case may exercise personal jurisdiction over a non-resident only when a court in the state in which it sits has jurisdiction. Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 713 (7th Cir. 2002).

The applicable state law in this case is that of Illinois. The Illinois long-arm statute contains a "catch-all" provision, 735 ILCS 5/2-209(c), that permits its courts to exercise jurisdiction on any basis permitted by the Illinois and U.S. constitutions. Kinslow v. Pullara, 2008 WL 3519882, *3 (7th Cir. Aug. 14, 2008). The Seventh Circuit has found no "operative difference" between the limits imposed by the Illinois constitution and the federal limits on personal jurisdiction; therefore, the inquiry under Illinois law may be collapsed into the federal constitutional analysis. *Id.*

Due process standards for personal jurisdiction require that the defendant have minimum contacts with Illinois "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Kinslow, 2008 WL 3519882 at *4. The defendant's contacts must not be merely random, fortuitous, or attenuated, but rather must demonstrate that the defendant has purposefully availed itself with the privilege of conducting business in the forum state such

that it should reasonably anticipate being haled into court there. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 473 (1985); <u>Citadel Group Ltd. v. Wash. Regional Med. Center</u>, 2008 WL 2971807, *3 (7th Cir. Aug. 5, 2008).

There are two types of personal jurisdiction: specific and general. Specific jurisdiction is appropriate when the case or controversy "arises out of" the defendant's contacts with the forum state. <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 n.8 (1984); <u>RAR, Inc. v. Turner Diesel, Ltd.</u>, 107 F.3d 1272, 1277 (7th Cir. 1997). General jurisdiction, on the other hand, is appropriate where the defendant's contacts are so continuous and systematic that it would be permissible to exercise jurisdiction even in cases that neither arise out of nor are related to the defendant's contacts with the forum state. <u>Helicopteros</u>, 466 U.S. at 414; <u>Hyatt</u>, 302 F.3d at 713.

Plaintiffs concede that defendant is not subject to specific personal jurisdiction because McKia-Coy's injury did not arise out of Horseshoe's contacts with Illinois.[3] They do argue, however, that the casino's contacts with Illinois are so continuous and systematic that the exercise of general jurisdiction would not offend due process (plf. br. 7). The court will therefore confine its analysis to the question of general jurisdiction.

The requirements for exercising general jurisdiction over a defendant are more stringent than those for specific jurisdiction. <u>Purdue Research Found. v. Sanofi-Synthelabo, S.A.</u>, 338 F.3d 773, 787 (7th Cir. 2003). The contacts with the forum state must be so extensive that the defendant could reasonably foresee being haled into court in that state for any matter. <u>Central States, Southeast and Southwest Areas Pension Fund v. Phencorp Reinsurance Co., Inc.</u>, 440 F.3d 870, 875 (7th Cir. 2006) (citing <u>Helicopteros</u>, 466 U.S. at 414-415). These

---

[3] Contrary to defendant's claim, plaintiffs need not allege that they were induced to travel to the casino as a result of the casino's contacts with Illinois, since plaintiffs do not claim that defendant is subject to specific jurisdiction in Illinois. *See* Def.'s Reply Br. 6.

contacts amount to the defendant's having a "constructive presence" in the forum state to such a degree that it would be fundamentally fair to require it to answer in the forum state "in *any* litigation arising out of any transaction or occurrence taking place *anywhere* in the world." Purdue Research Found., 338 F.3d at 787 (emphasis in original).

Factors courts consider in determining whether general jurisdiction exists include the following: (1) whether and to what extent the defendant conducts business in the forum state; (2) whether the defendant maintains an office or employees within the forum state; (3) whether the defendant sends agents into the forum state to conduct business; (4) whether the defendant advertises or solicits business in the forum state; and (5) whether the defendant has designated an agent for service of process in the forum state. Adventus Americas Inc. v. Innovative Environmental Technologies, Inc., 2007 WL 704938, *6 (N.D. Ill. March 5, 2007) (citing Helicopteros, 466 U.S. at 416).

Jurisdiction is normally determined as of the date of the filing of the suit. Wild v. Subscription Plus, Inc., 292 F.3d 526, 528 (7th Cir. 2002). When it must be determined whether the defendant was continuously and systematically doing business in the forum state, however, courts have looked at the contacts before the filing date to determine if there was an existing "regularity of contact" at the time the suit was filed. Michael J. Neuman & Assoc. v. Florabelle Flowers, Inc., 15 F.3d 721, 725 (7th Cir. 1994); see also Central States, Southeast and Southwest Areas Pension Fund v. Phencorp Reinsurance Co., 530 F. Supp 2d 1008, 1017 (N.D. Ill. 2008). In Michael J. Neuman, the Seventh Circuit looked at the four-year period leading up to the filing of the suit to determine that the defendant had conducted consistent business activity in Illinois. That the defendant's business activity, including sales, in Illinois had decreased significantly in the six months leading up to the commencement of the suit did

not preclude a finding that Illinois could exercise personal jurisdiction over the defendant. *Id.* at 724.

In a case with facts very similar to this case, an Illinois court found that general jurisdiction existed over defendant's casino under the state's long-arm statute. <u>Adams ex rel. Adams v. Harrah's Maryland Heights Corp.</u>, 789 N.E.2d 436, 439 (Ill. App. 5 Dist. 2003). In that case, two Illinois residents were injured at the casino, located in Maryland Heights, Missouri, near St. Louis. *Id.* at 438. Defendant advertised regularly in several media with the aim of attracting Illinois residents to the casino. It also directed fliers, brochures, and coupons to Illinois residents, and about one-third of Harrah's "gold card" holders resided in Illinois. *Id.* at 440. Further, it operated a free shuttle from Alton, Illinois, to the casino. Based on these facts, the court found that there was "no question that the defendant purposefully directed its activities toward Illinois residents." It therefore held that Harrah maintained continuous and systematic business contacts with Illinois that were sufficient to support the assertion of general jurisdiction over the casino. *Id.* at 440-441.

Similarly, in <u>Central States</u>, the Northern District of Illinois found general jurisdiction was properly exercised over the defendant, Phencorp, in the U. S., even though it was a foreign corporation that neither maintained a physical place of business nor owned real estate in the U.S. 530 F. Supp 2d at 1011. Phencorp had, however, entered into five reinsurance agreements with U.S. companies before the lawsuit was filed, and it still had obligations under those contracts at the time the lawsuit was filed. The contract terms created a "continuous course of dealing" between the parties that was sufficient to confer general jurisdiction over Phencorp. *Id.* at 1019.

On the other hand, in cases in which general jurisdiction was not found, the defendant's contacts were more attenuated than in the case at bar. In <u>Helicopteros</u>, the U.S. Supreme Court held that general jurisdiction in Texas did not exist where the defendant, a Colombian company, had sent its chief executive officer to Houston for a contract-negotiating session on one occasion; had accepted into its New York bank account checks drawn on a Houston bank; had purchased helicopters from a Texas company; and had sent employees to Fort Worth for training. 466 U.S. at 411. These contacts were not found to be continuous and systematic, and general jurisdiction could not be asserted over the defendant. <u>Id.</u> at 416.

Turning to the facts of this case, McKia-Coy and Coy have demonstrated that Horseshoe has sufficient minimum contacts with Illinois, such that its being sued here would not offend "traditional notions of fair play and substantial justice." Horseshoe's contacts with Illinois are continuous and systematic, such that Horseshoe could reasonably be expected to be haled into court in Illinois even in cases that do not arise out of or relate to its contacts with Illinois. Therefore, Horseshoe is subject to the general jurisdiction of this court.

The factual similarities of this case and <u>Adams</u> are striking. In both cases the casinos purposefully availed themselves of the opportunity to do business in Illinois through extensive advertising and mailings directed at Illinois consumers. Horseshoe was advertising heavily in Illinois in February 2008, when this suit was filed. In both this case and <u>Adams</u>, moreover, the casinos arranged for free bus service from Illinois for the purpose of bringing Illinois consumers to the casinos.

Horseshoe claims that the plaintiffs here have not indicated how many of Horseshoe's Loyalty Club members are from Illinois, unlike the plaintiffs in <u>Adams</u> who demonstrated that one-third of Harrah's gold club members were from Illinois. However, based solely on the

substantial number of people brought to the casino by bus from Illinois, it is clear that a substantial number of the casino's patrons come from Illinois. These numbers suggest that Horseshoe engages in sustained advertising and solicitation of Illinois consumers. Furthermore, Horseshoe's ongoing contractual relationship with an Illinois company, CET, to shuttle guests from the Chicago area to the casino, suggests that it was deliberately availing itself of the opportunity to transact business with Illinois companies and consumers.

Despite Horseshoe's urging that <u>Dugger v. Horseshoe Hammond, Inc.</u> should be persuasive, <u>Dugger</u> is distinguishable (04 C 6736, N.D. Ill. July 7, 2005). Although <u>Dugger</u> was factually similar to this case – Illinois residents were injured when they slipped and fell on the wet floor of Horseshoe's parking garage – the legal argument that plaintiffs in <u>Dugger</u> pursued differed from that made here. The <u>Dugger</u> plaintiffs did not argue that Horseshoe's contacts were so continuous and systematic as to subject the casino to general jurisdiction in the Northern District of Illinois. *Id.* at 4. As such, the court analyzed only the question of whether Horseshoe was subject to specific jurisdiction. Because the <u>Dugger</u> plaintiffs failed to show that their injuries arose from or were related to Horseshoe's advertisements in Illinois, specific jurisdiction was not proper. *Id.* at 5. Here, plaintiffs acknowledge that their injuries did not arise out of Horseshoe's business contacts with Illinois. They allege only that Horseshoe is subject to general jurisdiction. This court agrees.

### Conclusion

For the reasons stated above, Horseshoe's motion to dismiss for improper venue is denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

Sept. 17, 2008.