UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALMA McKIA-COY and MARIO COY, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 08 C 1709 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| HORSESHOE HAMMOND, LLC, | ) | |
| d/b/a Horseshoe Hammond, | ) | |
| a foreign corporation,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Alma McKia-Coy slipped and fell on a patch of liquid in a parking ramp outside defendant Horseshoe Hammond, LLC's casino. McKia-Coy filed suit in the Circuit Court of Cook County, Illinois, seeking damages, while her husband sought damages for loss of consortium, all on the theory of premises liability.[2] Horseshoe removed to this court, and now moves for summary judgment. For the reasons stated herein, the court grants Horseshoe's motion.

---

[1] The case caption indicates that Horseshoe is a corporation despite Horseshoe's contention in its post-removal briefing that it is a limited liability company. In that briefing, Horseshoe supported diversity jurisdiction by establishing: that plaintiffs are citizens of Illinois; that Horseshoe is a citizen of Delaware by virtue of the citizenship of its owner; and that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

[2] Mario Coy, McKia-Coy's husband, alleges a theory of liability that depends on Horseshoe's liability to McKia-Coy. Horseshoe has not separately briefed the issue of Coy's marriage to McKia-Coy or his damages–the only allegations independent of McKia-Coy's–and so Horseshoe will be entitled to summary judgment on Coy's claims only if the court finds in its favor on McKia-Coy's claims.

# I. BACKGROUND FACTS[3]

McKia-Coy drove with her granddaughter Christian Seals to Horseshoe, a casino in Hammond, Indiana, on May 20, 2006. After parking, McKia-Coy went into the casino to redeem a coupon, leaving Seals in their automobile. Roughly ten minutes later, McKia-Coy exited Horseshoe through a different door and, while returning to her car, fell, sustaining injuries that required replacement of her knee.

McKia-Coy had not seen anything in her path but felt something slick beneath her foot as she slipped and fell. Later, McKia-Coy and Seals saw a patch of a whitish liquid substance, about ten inches by five, extending outward from a garbage can. McKia-Coy and Seals noticed that the former's slip had made a mark through the substance.

The source of the substance is unclear. Neither McKia-Coy nor her granddaughter saw a cup, straw, glass, can, or bottle near the substance, and cannot recall seeing any other spill or substance on the top or side of the nearby garbage can. McKia-Coy saw that the can was old but did not find any holes in it, and neither she nor Seals inspected it. Neither McKia-Coy nor Seals saw any substance on the floor before the slip, or anyone else slip, stumble, or drop anything on the floor.

McKia-Coy testified that the substance came from the garbage can; immediately thereafter, however, she stated, "I don't want to say that. I don't know where it came from." She later reaffirmed that she did not know how the liquid got there, and testified that she never found out how the liquid substance got on the floor. Seals likewise

---

[3] Unless otherwise noted, these facts are uncontested or contested without basis in the record for such dispute. Horseshoe asserts that because plaintiff's facts are derived from her deposition, which is inadmissible at trial, that transcript cannot be used in opposition to summary judgment. This argument is meritless and frivolous. While admissibility is a threshold matter that must be determined at summary judgment, evidence must be admissible only in substance, and not in form, so that deposition transcripts are routinely used as an acceptable proxy at this stage for live testimony, which would be virtually impossible. *See Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994).

testified that "it looked like a leak where you could see something draining from the trash can," but did not see any holes in the trash can. Aside from the substance, the floor was clean.

Horseshoe had garbage cans placed throughout the parking pavilion, generally near entrances and stairwells. Each can had a concrete exterior, a plastic interior shell, and a steel sack bag liner. Before McKia-Coy's accident, four garbage cans had been replaced after being hit by automobiles or damaged by casino guests.

At 6:00 a.m. each day, Horseshoe staff began inspecting the garbage cans and their surroundings, including checking the cans for any spills and emptying full cans; the whole job normally required four and one-half hours. The staff knew that patrons might put garbage in or around the trash cans, and so the staff would check to make sure that there was no slippery substance around the trash cans. The staff found spills or food on the side of the can a couple of times per week.

Each parking level, including areas around the garbage cans, was power-washed when necessary, and in any case at least four times monthly. When necessary, Horseshoe staff used a scrubbing machine to further clean the floor. The staff poured liquid soap into the machine before scrubbing the floors. While the soap and water mixture might spill from the machine if overfilled, the only employee to testify regarding the machine's use testified that he never overfilled it. After washing, Horseshoe staff always put out signs indicating that the floor was wet.

## II. LEGAL STANDARD

Summary judgment is warranted where "the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to

any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008). Normal burdens of proof remain, however. If a plaintiff has failed to establish one of the elements of his case and there is no factual dispute regarding that element, then summary judgment will be entered in favor of the defendant. *See Beard v. Banks*, 548 U.S. 521, 529-30 (2006).

### III. CHOICE OF LAW

An initial issue concerns which substantive law applies to this case, where the injury occurred in Indiana but the proceedings are in a court sitting in Illinois. A federal court sitting in diversity applies the choice-of-law analysis of the state in which it sits. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). Before engaging in a choice-of-law analysis, Illinois courts first look to each state's substantive law to determine whether the outcome would differ between the two states. *Wreglesworth ex rel. Wreglesworth v. Arctco, Inc.*, 7358 N.E.2d 964, 969 (Ill. App. Ct. 2000). Illinois and Indiana have both adopted the Restatement (Second) of Torts § 343 as the framework for analyzing the duty of landowners to their invitees. *Grillo v. Yeager Constr.*, 900 N.E.2d 1249, 1267 (Ill. App. Ct. 2008); *City of South Bend v. Dollahan*, 918 N.E.2d 343, 352 (Ind. App. Ct. 2009). Where, as here, there is no difference between the two states' laws, the court applies Illinois law. *See Gleim v. Roberts*, --- N.E.2d ----, 2009 WL 2778326, at *4 (Ill. App. Ct. Sept. 1, 2009).

## IV. ANALYSIS

The parties do not dispute that McKia-Coy was an invitee. *See* Restatement (Second) of Torts § 343 cmt. b. Section 343, which sets landowners' standard of care for invitees, provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against danger.

*Id.* Horseshoe contends that McKia-Coy has failed to raise a triable issue regarding (a), *i.e.*, that it had actual or constructive notice of the substance on which McKia-Coy slipped.[4] McKia-Coy responds that sufficient evidence exists to support a jury finding not only that Horseshoe had constructive notice of the substance, but that Horseshoe created the substance.

### A. Whether Horseshoe had Constructive Notice

A landowner can have constructive notice of a condition on his premises if (1) the dangerous condition existed for a sufficient amount of time so that it would have been discovered by the exercise of ordinary care or (2) the dangerous condition was part of a pattern of conduct or a recurring incident. *See Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 123 (7th Cir. 1988) (citing *Chapman v. Foggy*, 375 N.E.2d 865, 868 (Ill. App. Ct. 1978) and *Dunlap v. Marshall Field & Co.*, 327 N.E.2d 16, 19 (Ill. App. Ct. 1976)).

---

[4] The parties agree, and Illinois law bears out, that Horseshoe was not the insurer of McKia-Coy's safety while she was on casino property. *See, e.g.*, *Chapman v. Foggy*, 375 N.E.2d 865, 868 (Ill. App. Ct. 1978). Horseshoe's argument to this end is irrelevant to the invitee analysis, which inquires not into the landowner's insurance of the invitee's safety, but rather into the landowner's failure to exercise reasonable care in ameliorating unsafe conditions on its property.

5

As *Culli* makes clear, a plaintiff-invitee seeking to establish constructive notice by virtue of the amount of time that a dangerous condition existed must provide some evidence of how long the condition existed. *Id.* at 123-24. McKia-Coy argues that the substance came from a leak in the nearby garbage can, and that the leak should have been evident to Horseshoe employees during their daily inspection that morning. But argument is not evidence, and McKia-Coy points to no evidence that that a hole existed in the first place,[5] that the substance came from that hole, or that the hole or the substance were present for any amount of time prior to McKia-Coy's injury. McKia-Coy has presented no evidence as to how long the white substance was present before she slipped on it, and so she has not created a genuine issue of material fact regarding whether the condition existed for a sufficient time that Horseshoe would have discovered it in the exercise of ordinary care.

McKia-Coy also argues that the white substance was part of a pattern of conduct or a recurring incident, asserting that Horseshoe knew that food and other substances were spilled near garbage cans, and thus it should have known of the spill that caused her injury. She also argues that the Horseshoe had replaced four garbage cans over some undefined period of time, and so should have known that the garbage cans were prone to leaking substances, which might cause injuries.

In *Culli*, the Seventh Circuit described the requirements to proceed under the pattern or practice theory:

> A pattern or practice of a particular type of spill is not necessary. What is needed is a pattern of dangerous conditions which were not attended to within a reasonable period of time. If the dangerous condition is part of a pattern of conduct or a recurring incident, this may establish liability.

---

[5] Both McKia-Coy and her granddaughter Seals testified in some form that the substance came from the can, but neither person inspected the can, and neither saw a hole in the can.

*Id.*, 862 F.2d at 126 (citations and quotation marks omitted). While McKia-Coy might have established that Horseshoe personnel found spills near garbage cans, she has not established that the spills were in any way dangerous. Furthermore, unlike the defendant in *Barchard v. City of Chicago*, No. 91 C 4801, 1993 WL 276726, at *5 (N.D. Ill. 1993), there is no evidence that Horseshoe had knowledge of any prior incidents of slippery substances in the specific area where plaintiff fell, that the spills occurred with any frequency, *see Culli*, 862 F.2d at 126-27, or that there were any extenuating circumstances (*e.g.*, in *Barchard*, the rain outside) that would have made a slippery substance particularly likely near the time the injury occurred. Finally, there is no evidence that any prior Horseshoe patron slipped on any material near any garbage can.

Even if there were evidence that spills happened near the garbage can where McKia-Coy was injured or that other patrons slipped and fell due to similar spills, no evidence exists that the spills "were not attended to within a reasonable period of time." *Id.*, at 126. Indeed, McKia-Coy's only evidence that other spills ever occurred came from Horseshoe employees who patrolled the parking pavilion and cleaned up any spills they found. If any inference is to be drawn from this, it is that Horseshoe's employees *did* clean up the spills, not that they left spills unattended.

Finally, McKia-Coy argues that the fact that Horseshoe had four damaged garbage cans in an undefined period before the incident somehow put it on constructive notice. There is no evidence that the garbage can in question was damaged; rather, the only evidence was that McKia-Coy and Seals, neither of whom saw any damage to the garbage can, saw the substance near the can. Moreover, there is no evidence establishing in what way the garbage cans had been previously damaged, whether such damage

7

rendered the cans susceptible to leaks, whether leaks in fact happened (given the multiple-layer cans), and, if so, whether leaks were left unattended for an unreasonable period of time.

McKia-Coy has failed to establish constructive notice under either permissible theory.

**B.      Whether Horseshoe Created the Unsafe Condition**

McKia-Coy finally argues that a reasonable jury could conclude that Horseshoe caused the condition in question. McKia-Coy has evidence that Horseshoe power-washed the parking pavilion, and that it might also scrub the pavilion with soap when and if the pavilion was particularly dirty. However, there is no indication when Horseshoe last power-washed the pavilion prior to McKia-Coy's injury, whether Horseshoe ever failed to put out signs indicating the floor was wet (the evidence establishes that Horseshoe always did so), or whether Horseshoe personnel ever spilled the soap used for scrubbing (only that *if* the scrubbing machine were ever over-filled, then the soap-water mixture would spill). Finally, while McKia-Coy apparently slipped on a whitish substance, there is no evidence of any similarity between the substance used in power-washing or scrubbing and the substance on which she slipped, such as comparative colors, textures, or viscosities. As with McKia-Coy's other arguments, speculation without evidence is a bridge too far.

## V. Conclusion

Horseshoe's motion for summary judgment is granted.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: February 2, 2010